CHARLES CARREON (127139)
Online Media Law, PLLC
2165 S. Avenida Planeta
Tucson, Arizona 85710
Tel:  520-841-0835
Attorney for plaintiffs
CRS Recovery, Inc. and
Dale Mayberry

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRS Recovery, Inc., a Virginia Corporation, and Dale Mayberry,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>John Laxton, and Northbay Real Estate, Inc., *et al.*.<br><br>　　　　　Defendants.<br><br>―――――――――――――――――<br>AND RELATED CROSS-CLAIMS<br>―――――――――――――――――  | Case No.: CV 06-07093 CW<br><br>CORRECTED SUPPLEMENTAL DECLARATION OF DALE MAYBERRY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date: September 18, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2<br><br>Trial Date:  October 20, 2008<br>Judge: Hon. Claudia Wilken |

### DECLARATION OF DALE MAYBERRY

Dale Mayberry declares and states as follows:

1. I am a plaintiff in this action, and make this declaration to controvert facts asserted by defendants John Laxton and Northbay Real Estate, Inc. (jointly "Defendants") in their Motion for Summary Judgment.  If called as a witness, I could and would so competently testify.

2. I would first respectfully refer the Court to my previously-submitted declaration, dated June 23, 2008, submitted in support of plaintiffs' Motion for Summary Adjudication, that

is incorporated here by reference.  Most of what I state below is in order to unequivocally refute the the unwarranted inferences drawn from my actions by Dr. John Levine in his declaration, submitted by Defendants in support of their motion.

3. I was the first registrant of RL.COM.  I purchased the registration from NSI on July 23, 1995, and held the registration continuously for 8 years until December 23, 2003.  On December 23, 2003, I had no reason to believe that my registration of RL.COM was anything but secure.  Eighteen months earlier, on July 23, 2002, I had renewed the registration for three years, and NSI confirmed a new expiration date of July 24, 2005.  (NSI Att. "C" at pages 40 and 44 – 47.)

4. Dr. Levine draws unwarranted inferences from my technical background.  I have only registered two domains in my life, RL.COM and MAT.NET, and had no knowledge of domain hijacking in 2003.  As stated in my declaration, I never received the Authorization Email that NSI sent to dale@mat.net at 2:07:01 A.M. on December 23, 2007, requesting denial or confirmation of a request to transfer RL.COM to Li Qiang.  Had I received the Authorization Email, I would have definitely denied it; however, instead it was received by Li Qiang, who responded to it with approval, and thereby stole the registration from me.

5. Dr. Levine has stated that when MAT.NET was shifted from my registration on December 19, 2003, I should have then changed the Administrative Contact email for RL.COM.  As I stated in my declaration, on December 23, 2003, I did not know that MAT.NET had passed into the control of another person, I had no idea that Li Qiang was that person, and I had no idea that Li Qiang had changed his official NSI user name to *dale@mat.net.*  Indeed, upon reviewing the NSI Declaration that explains the manner in which Li Qiang both initiated and approved his own transfer request that I had any idea how Li Qiang had deprived me of the RL.COM registration without my knowledge.

6. Dr. Levine has stated that I abandoned RL.COM because I ceased to host a website at the domain.  This is like saying that a person has abandoned the automobile that is parked in

---

PAGE 2 OF 5, CORRECTED SUPPLEMENTAL DECLARATION OF DALE MAYBERRY  IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2

their garage because they haven't driven it in awhile.  I knew and know of no requirement that I maintain a website in order to maintain ownership of the domain.

7. Dr. Levine has stated that I abandoned RL.COM because I allowed MAT.NET to expire and, presumably, it was to be anticipated that whoever gained the domain would block my access to dale@mat.net and respond to email addressed to me, such as the NSI Authorization Email.  *First*, as noted above, I did not know that MAT.NET had been acquired by Li Qiang, and *second*, based on my experience operating Micro Access Technologies as an Internet Service Provider ("ISP") through MAT.NET, I knew that it was unlawful for an ISP to read emails or use the information in them.[1]  I did not anticipate that anyone would engage in criminal conduct such as stealing my email account, intercepting emails addressed to me, and forging emails in my name to steal RL.COM.  In sum, I neither knew that I had lost MAT.NET, nor did I have any intimation that RL.COM was in danger of being hijacked.  I attempted to renew MAT.NET when I did not receive a renewal notice, but was unable to do so.  The problems with renewing MAT.NET, however, did not signal any dangers looming for RL.COM, and I was confident that RL.COM was safe with the three-year registration through July 24, 2005.

8. Dr. Levine implies that I failed to provide accurate information to NSI with regard to the registration of RL.COM and/or MAT.NET; however, he is wrong.  I always provided valid data to NSI.  Any inaccurate data found in the RL.COM and MAT.NET registration records was put there by someone else.

9. Dr. Levine derives from some of my email correspondence a single line in which I express a sense of resignation about he loss of RL.COM, and attempts to infer abandonment from that statement.  In fact, I made that statement to Richard Lau in the course of negotiating the assignment agreement pursuant to which I was able to obtain the return of MAT.NET and see this case to recover RL.COM filed and pursued.  At no

---

[1]  Reading or using the content of another's emails is a violation of the Stored Communications Act under 18 U.S.C. §§ 2701(a)(1) and 2707(a), and "interception" of emails violates the Wiretap Act, 18 U.S.C. § 2511.

time have I ever surrendered my rights to RL.COM to an unlawful acquirer.  The sole lawful transferee of RL.COM is plaintiff CRS Recovery, Inc.

10. John Laxton has stated that I did nothing to recover RL.COM and remained silent regarding my interest while he "built a business" at RL.COM.  This is a serious distortion of the facts with no similarity to the truth, and ignores what I stated in my first declaration and at deposition.  *First*, immediately after the hijacking of RL.COM, I contacted NSI attempting to recover the registration, and contrary to the assertion of Dr. Levine, NSI was unable to do anything, since the registration had already been changed to the offshore registrar BIZ.CN.  *Second,* I contacted BIZ.CN and they were initially communicative, apparently thinking I worked for NSI, but I made no attempt to disguise my identity, and BIZ.CN terminated communications as soon as they realized I was the person who had lost RL.COM.  *Third,* if John Laxton or any other person had contacted me at any time, and asked why I no longer held the registration for RL.COM when I had owned it for 8 years since the original July 1995 registration, I would have told him the entire truth – that the domain had been stolen in 2003 by persons unknown, and that I had already assigned the rights to recover the domain to Richard Lau and his company, CRS Recovery, Inc.  *Fourth,* while it is true that I could find out, via Whois, who the current registrant of RL.COM was at any given time, for almost three years, the registrant was always a foreign individual located in either China or India, whom I had no hope of pursuing legally with my limited resources.  *Fifth,* I never gave up my desire to see justice done in this matter, and entered into the assignment with Richard Lau and CRS Recovery, Inc. in order to file this lawsuit and recover RL.COM for the benefit of the assignee.  *Sixth,* Laxton hasn't built any business at all at RL.COM, and collected advertising commissions totalling $2,053.83 between May 15, 2005 and January 21, 2008,  by renting the domain as Internet ad-space to  TRAFFICZ.COM.

11. Finally, Laxton has stated that I was guilty of "laches," that is to say, unwarranted delay in filing this action.  This is incorrect.  Laxton acquired the domain on or about May 15,

2005; he was notified of impending litigation by letter dated February 27, 2006; and, this action was filed eighteen months after he acquired the domain, on November 15, 2006.

I hereby declare, pursuant to the provisions of 28 U.S.C. § 1746 (2), under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Alexandria, Virginia on September 9, 2008

_____s/Dale Mayberry/s_____
Dale Mayberry, Declarant

I hereby attest that I have secured and will keep on file the holograph signature corresponding to the above conformed signature denoted by the symbol (s/.../s) in the above efiled document.

Dated:  September 9, 2008         ONLINE MEDIA LAW, PLLC
                                  By: s/Charles Carreon/s
                                  CHARLES CARREON (127139)
                                  Attorney for plaintiffs
                                  CRS Recovery, Inc. and Dale Mayberry