IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRS RECOVERY, INC., a Virginia Corporation, and DALE MAYBERRY,<br><br>    Plaintiffs,<br><br>  v.<br><br>JOHN LAXTON, aka johnlaxton@gmail.com, <u>et al.</u>,<br><br>    Defendants.<br>_____/ | No. C 06-7093 CW<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY ADJUDICATION |

    Plaintiffs CRS Recovery, Inc. and Dale Mayberry move for summary adjudication on their claims for conversion and declaratory relief.  Defendants John Laxton and Northbay Real Estate, Inc. (NRE) oppose Plaintiffs' motion and cross-move for summary judgment or, in the alternative, summary adjudication.[1]  The matter was

---

[1] In addition to Laxton and NRE, the second amended complaint names a number of additional Defendants.  At the hearing on the present motion, Plaintiffs stated that they would voluntarily dismiss the claims they have asserted against Defendants other than

heard on September 18, 2008. Having considered oral argument and all of the papers submitted by the parties, the Court grants Plaintiffs' motion and denies Defendants' motion.

## BACKGROUND

This case arises from the theft of two internet domain names from Mayberry: rl.com and mat.net. Since this action was initiated, Mayberry has recovered control of mat.net. Defendants currently maintain control of rl.com.

Mayberry is a citizen of Virginia. On July 23, 1995, he registered the domain name rl.com through Network Solutions, Inc. (NSI). RL was intended to be an acronym for "real life," a term used in the online gaming world. Mayberry also registered the domain name mat.net at an unspecified time. MAT stands for Micro Access Technologies, Inc., an internet service provider company that was owned and operated by Mayberry. The company went out of business in 2001, but Mayberry continued to maintain the mat.net domain name through NSI. As the registered administrator of both domain names, Mayberry provided NSI with the email address dale@mat.net as part of his contact information.

To maintain a domain name registration with NSI, the registrant must pay yearly registration fees. These fees can be paid several years in advance or on a yearly basis. Mayberry states in his declaration that he renewed the registration of rl.com on July 23, 2002 for three years, leading to an expiration date of July 24, 2005. This account is confirmed by NSI's business

---

Laxton and NRE. Those claims are therefore dismissed. The term, "Defendants," as used in this order, refers to Laxton and NRE only.

records.[2]

According to NSI's records, on December 19, 2003, control over the mat.net domain was transferred to Beijing Sinonets Network & Telecom. Hosting for mat.net was transferred from NSI's servers to servers at bim.com. After this transfer, Mayberry was unable to send or receive emails using the dale@mat.net address. At some point thereafter, Li Qiang was listed as the administrative contact for the mat.net domain, with an email address of lee@bim.com.[3] As the administrator of mat.net, Qiang was able to use the dale@mat.net email address.

The circumstances surrounding the transfer of mat.net are not entirely clear. Defendants' expert submits, with some support in the record, that Mayberry failed to renew mat.net's registration when it expired on October 2, 2003. At his deposition, Mayberry testified that he did not attempt to renew this registration until sometime in December, 2003, at which point his registration would have already expired. If Mayberry's registration of mat.net had

---

[2] Defendants object to the use of the records because Plaintiffs allegedly failed to serve them with notice of the deposition of Natalie Sterling, the NSI records custodian to whose declaration the records are attached. However, while failure to serve notice of a third-party deposition is improper under the Federal Rules of Civil Procedure, it does not appear that Plaintiffs actually deposed Ms. Sterling. Instead, Ms. Sterling submitted the declaration in lieu of giving deposition testimony. Defendants also object to Ms. Sterling's interpretation of the records because she has not laid a proper foundation for her testimony. However, the Court has not relied on Ms. Sterling's interpretation of the documents, but rather on the documents themselves.

[3] Plaintiffs assert that the administrative contact information was changed on December 19, 2003, but the record they cite in support of this assertion appears to identify the administrative contact as of March 28, 2004. See Sterling Dec. Ex. B at 14.

3

expired, the domain would have been available for someone else to register. NSI's documents show that on December 19, 2003, before the transfer was initiated, Mayberry's contact information was associated with mat.net's registration. But the same document also shows that NSI's record of mat.net's registration was created on December 18, 2003 and was set to expire on October 2, 2004 -- less than the one-year interval for which registration is purchased. Plaintiffs do not fully explain these discrepancies. However, these details are not dispositive of the present motion because Plaintiffs' claims concern the theft of rl.com, not mat.net.[4]

On December 23, 2003, Qiang changed the email address associated with his NSI user account from lee@bim.com to dale@mat.net. He then submitted a transfer request to NSI asking that the domain rl.com be transferred to him. NSI sent an email to dale@mat.net, which was still listed as the administrative contact for rl.com, requesting authorization for the transfer. The email contained a link to a secure web page from which the transfer could be approved. Mayberry did not receive this email because he no longer had access to email sent to dale@mat.net. The recipient of the email -- presumably Qiang -- approved the transfer, and control of rl.com passed out of Mayberry's hands.

It is not clear exactly when Mayberry learned that mat.net and rl.com had been "hijacked." In his declaration, he states that he learned of rl.com's status on or about January 19, 2004, when a

---

[4] Although Defendants assert that "Mayberry gave up rl.com when he let mat.net expire," they do not support this conclusory statement with any legal authority, as discussed below.

4

third party informed him that the domain was no longer registered under his name. However, it appears that he learned of problems with mat.net at an earlier date. Mayberry made several phone calls to attempt to recover control of the domains, but met with no success. There are some discrepancies in the record concerning the details of Mayberry's efforts to recover the domains, but these details are not material, as discussed below.

Rl.com was eventually transferred to an individual in India named Barnali Kalita. In 2005, Laxton learned that Kalita owned the domain and contacted him to inquire whether it was for sale. Laxton is a citizen of California and was interested in purchasing the domain to serve as a website for his business, NRE, headquartered in California. Kalita sold rl.com to Laxton for $15,000. The sale was completed on May 20, 2005. A visit to the website rl.com retrieves a page entitled, "Real Estate Loans."

In October, 2004, Richard Lau, a principal of CRS Recovery, a Virginia corporation, learned of the hijacking of rl.com and contacted Mayberry. Mayberry agreed to transfer all of his rights to the domain to CRS Recovery in exchange for a monetary payment and the promise that CRS Recovery would attempt to return mat.net to him.

Plaintiffs assert claims against Defendants for conversion, intentional interference with contract, violation of the California Unfair Competition Law, and declaratory relief.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the

5

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d

6

1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie

7

showing in support of its position on that issue. <u>UA Local 343 v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. <u>Id.</u> Once it has done so, the non-moving party must set forth specific facts controverting the moving party's <u>prima facie</u> case. <u>UA Local 343</u>, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." <u>Id.</u> This standard does not change merely because resolution of the relevant issue is "highly fact specific." <u>Id.</u>

## DISCUSSION

I.   Choice of Law

The parties dispute whether California or Virginia law should apply to Plaintiffs' conversion claim. This issue is potentially dispositive because California law recognizes a property interest in domain names, <u>Kremen v. Cohen</u>, 337 F.3d 1024 (9th Cir. 2003), whereas Virginia law does not, <u>Network Solutions Inc. v. Umbro</u>, 259 Va. 759 (2000).

"When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies." <u>Orange Street Partners v. Arnold</u>, 179 F.3d 656, 661 (9th Cir. 1999). The Court thus looks to California choice-of-law doctrine to determine whether to apply Virginia or California law to the conversion claim.

California has adopted the "governmental interest" approach to choice of law issues. As the California Supreme Court has explained,

8

> the governmental interest approach generally involves three steps. First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107-08 (2006) (citation and internal quotation marks omitted). "A party advocating application of foreign law must demonstrate that the foreign rule of decision will further the interest of that foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." Tucci v. Club Mediterranee, S.A., 89 Cal. App. 4th 180, 188-89 (2001). If California law can be applied without violating the policy of the foreign state, there is a false conflict, and California law should be applied. See id.

The parties do not dispute that, as noted above, the rule in California differs from that in Virginia in a material respect. Accordingly, the Court proceeds to determine whether Virginia has an interest in applying its law to this case.

Defendants argue generally that Virginia has an interest in not having the "underlying policies" of its property law "negated" by the Court's recognition of a property right, rather than just a contract right, to a domain name. But they have not identified any specific policy advanced by the rule, and their argument thus

9

amounts to saying that Virginia's interest in having its rule applied is in not having another State's rule applied.  This is no more of an interest than any State will always have in any comparative interest analysis -- California likewise has an generalized interest in not having the "underlying policies" of its property law, which recognizes a property right to domain names, negated.  The question is whether the policies underlying Virginia's rule would actually be furthered by applying the rule in the specific context of this case.  Accordingly, the Court must focus on the specific interests that are advanced by the rule.

Virginia's rule protects the purchaser of a domain name from liability for conversion.  Because Virginia has established that no property rights can be exercised over a domain name, individuals who purchase a domain within the State can justifiably expect that they will not be held liable for conversion in connection with that purchase.  Virginia's interest is thus appropriately characterized as in providing these purchasers with a predictable limitation of their potential liability.  See Tucci, 89 Cal. App. 4th at 190. Defendants have cited no authority to support the view that the State's decision not to impose liability for conversion should instead be seen as expressing a particular interest in preventing its citizens, like Mayberry, from recovering a domain name that has been stolen from them.

If Defendants resided in Virginia or if Laxton had purchased rl.com in Virginia, Virginia could be said to have an interest in applying its rule in this case.  However, Laxton is a citizen of California and the conduct that gave rise to Defendants' liability

10

for conversion is Laxton's purchase of rl.com from Kalita. See Soc'y of Cal. Pioneers v. Baker, 43 Cal. App. 4th 774, 781-83 (1996) (noting the long-standing rule that a cause of action for conversion against a subsequent purchaser of the property accrues when the purchaser obtains possession, not at the time of the original conversion). No aspect of that transaction took place in Virginia. It is not clear that Laxton would even be subject to the personal jurisdiction of the Virginia courts if this action had been brought there. Virginia has no interest in protecting the conduct of a California resident when that conduct has no connection to Virginia. As California residents, Defendants had no justifiable expectation that their conduct would be shielded from liability for conversion. Applying Virginia law in this instance would thus do nothing to further that State's interest in providing its residents with a predictable definition of liability.[5] In contrast, California has an interest in regulating conduct that occurs within its borders and in ensuring that redress is available when such conduct is tortious. See Zimmerman v. Allstate Ins. Co., 179 Cal. App. 3d 840, 846 (1986). California therefore has an interest in seeing its rule applied to this case.

    Defendants rely heavily on choice-of-law doctrine as it applies to contract disputes. They note that the registration agreement between Mayberry and NSI provided that all disputes

---

[5] Nor does the fact that Mayberry was originally injured in Virginia indicate that Virginia law should apply; in adopting the governmental interest approach to choice of law questions, California displaced the previous approach of applying the law of the state where the injury occurred. Hurtado v. Superior Court, 11 Cal. 3d 574, 579-80 (1974).

11

concerning their contractual obligations would be governed by Virginia law. But this is not an action for breach of the NSI contract. Likewise, the existence of an agreement between Mayberry and Laxton is wholly irrelevant to Plaintiffs' conversion claim. Plaintiffs are asserting a <u>property</u> right against Defendants. For the same reason, the terms of the contract between Laxton and Kalita (which has no connection to Virginia other than that the domain registration information is allegedly located in a database on computers in that State) has no bearing on the law that should be applied to the conversion claim.

Defendants further assert that Virginia has an interest in applying its law because, if California law were applied in this case, it would "impact domain name registration services for some of the largest domain name registrars and registries in the world, including NSI, VeriSign and others, which have their computer databases located in Virginia." Defs.' Br. At 8. Defendants fail to explain, however, how applying California law to Plaintiffs' conversion claim would have any effect whatsoever on the operations of the providers of domain registration services. The liability of those providers is simply not at issue here, and thus applying California law to the conversion claim would not "encourage plaintiffs to forum shop in order to try to circumvent the settled law of Virginia" and hold providers liable. <u>Id.</u> at 9. Nor does the fact that the domain registration information is allegedly located in a database on computers in Virginia[6] give Virginia an

---

[6]The parties dispute the location of the registry information.

12

interest in protecting Defendants' conduct.

Because Virginia does not have an interest in the application of its rule to this case whereas California does, the posited conflict is a false one. The Court will therefore apply California law.

II. Liability for Conversion Under California Law

Under California law, conversion is defined as "the wrongful exercise of dominion over the personal property of another." Fremont Indem. Co. v. Fremont General Corp., 148 Cal. App. 4th 97, 119 (2007). "The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." Id. Damages are presumed in conversion actions. See Cal. Civ. Code §§ 3336-3337.

Defendants argue that, even if California law applies to Plaintiffs' claim against them, in order to prove that they are liable for conversion, Plaintiffs must establish that the original theft of rl.com by Qiang constituted conversion under Virginia law. This argument is not persuasive. It does not appear that Virginia law would apply to a conversion claim in this Court by Plaintiffs against Qiang, in that Qiang is not a Virginia citizen and does not appear to have stolen rl.com in Virginia. But even if it did, the conversion claim before the Court is not against Qiang, it is against Defendants. Pursuant to California law, which the Court has already determined applies to Plaintiffs' claim against Defendants, Mayberry had a property right to rl.com at the time it

13

was taken from him. He was not lawfully dispossessed of that right by Qiang's seizure of the domain without Mayberry's authorization, and thus it was not possible for Defendants to acquire a right to the domain superior to Mayberry's by virtue of Laxton's purchase from Kalita. Defendants are therefore <u>prima facie</u> liable for conversion.

It is of no consequence that Defendants purchased rl.com in good faith and without knowledge of Qiang's previous theft of the domain name. In <u>Express Media Group, LLC v. Express Corp.</u>, 2007 WL 1394163 (N.D. Cal.), the court addressed the applicability of the good-faith-purchaser defense in an action for conversion of a stolen domain name. The court noted that California law "distinguishes between the person who purchased from someone who obtained title to the property by fraud and the person who purchased from a thief who had no title to sell. . . . An involuntary transfer results in void title, while a voluntary transfer, even if fraudulent, results in voidable title." <u>Id.</u> at *5 (citing Cal. Com. Code § 2403(1); <u>Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 218 Cal. App. 3d 1354, 1360-61 (1990)). "[A]n innocent purchaser for value and without actual or constructive notice that his or her vendor has secured the goods by a fraudulent purchase is not liable for conversion." <u>Id.</u> But the rule is different when it comes to involuntary transfers: because "[s]tolen property remains stolen property," a thief "cannot convey valid title to an innocent purchaser of stolen property." <u>Naftzger v. Am. Numismatic Soc'y</u>, 42 Cal. App. 4th 421, 432 (1996). Accordingly, mere possession of a domain name that was

14

involuntarily transferred from the rightful owner is sufficient to convey liability for conversion.  See Express Media, 2007 WL 1394163, at *5-*6.  Defendants have not pointed to any evidence that Mayberry voluntarily transferred the title of rl.com to Qiang as a result of fraud.[7]  To the contrary, all of the evidence suggests otherwise.

Defendants argue that Mayberry abandoned his right to possess rl.com, and therefore Plaintiffs cannot prevail on their conversion claim.  In order to succeed on an abandonment defense to conversion under California law, however, a defendant must show a "clear, unequivocal, and decisive act" demonstrating a waiver of the plaintiff's property rights.  See Hopson v. Nat'l Union of Marine Cooks and Stewards, 116 Cal. App. 2d 320, 325 (1953) (addressing waiver or abandonment of a legal right generally); see also Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1281-82 (2002) (upholding an abandonment defense to a conversion claim where the property at issue had been discarded in an outdoor garbage receptacle).  Defendants point to no such affirmative relinquishment of Mayberry's right to exercise control over rl.com.  It is undisputed that Mayberry had paid to register the domain with NSI through July 24, 2005.  After he learned that the domain had been stolen, he attempted to rectify the situation, but met with no success.  The fact that, at one point, he had resigned himself to losing the domain (as he stated at his

---

[7] Qiang may have committed fraud on NSI, but insofar as the transfer was "voluntary," the volition is attributable to NSI, not to Mayberry, the actual possessor of the property rights at issue.

15

deposition) does not demonstrate a voluntary abandonment of his rights. It simply indicates that he had concluded that further attempts to recover the domain would continue to meet with failure so long as Qiang, who was effectively immune from any legal recourse in the United States, controlled it. Nor do Defendants cite any authority for their assertion that Mayberry's failure to maintain a live website at rl.com signifies an abandonment of his right to the domain. The "use-it-or-lose-it" rule proposed by Defendants may express their preferred policy with respect to domain ownership, but as a legal theory it is not supported by case law. The Court can also divine no intent to abandon rl.com from Mayberry's failure to update his contact information with NSI once he lost access to the email address, dale@mat.net. It is not clear when Mayberry first learned that he no longer could access his email, and only four days passed between mat.net's transfer to Qiang and the theft of rl.com. In any event, Mayberry's failure to change the contact information for rl.com immediately following the loss of mat.net cannot be interpreted as an affirmative abandonment of his rights to the domain.

Defendants also assert that the equitable doctrine of laches should bar Plaintiffs' conversion claim because Plaintiffs delayed unreasonably in bringing this lawsuit. However, as Plaintiffs point out, conversion is a legal claim, not an equitable one. The statute of limitations thus governs the timeliness of Plaintiffs' claim, not the equitable doctrine of laches. Defendants do not refute this argument in their reply, nor do they argue that Plaintiffs failed to file this action within the applicable

limitations period.  It appears that they have withdrawn this argument.  In any event, Plaintiffs did not delay unreasonably in bringing this lawsuit, and thus the doctrine of laches, even if it applied, would not prevent them from asserting their claim.

Finally, Defendants argue that CRS Recovery's entitlement to relief is based on an invalid transfer and assignment.  This argument is based on a provision in Mayberry's service agreement with NSI for the registration of rl.com.  The agreement provides that Mayberry's rights under the contract are not assignable or transferrable.  But Plaintiffs do not assert claims against Defendants for breach of the service agreement; they assert a conversion claim.  The non-assignment clause of the NSI contract is therefore irrelevant.

For these reasons, the Court finds that Defendants are liable to Plaintiffs for conversion of the rl.com domain.  As a remedy, Plaintiffs are entitled to specific recovery of the domain.  See Cal. Civ. Code §§ 3379-3380; Express Media, 2007 WL 1394163, at *4.

III. Claim for Declaratory Relief

Plaintiffs also seek a declaration of their rightful title to rl.com.  Although such a declaration is arguably no different than judgment in their favor on the conversion claim, the Court will grant this claim for the reasons stated above.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary adjudication is GRANTED (Docket No. 118).  The Court grants summary judgment against Defendants John Laxton and Northbay Real Estate on Plaintiffs' claims for conversion and declaratory relief.

17

1  Defendants' cross-motion for summary adjudication is DENIED (Docket
2  No. 131).
3       At the hearing, Plaintiffs agreed to dismiss the second and
4  third causes of action against Defendants if Plaintiffs prevailed
5  on the present motion.  Those claims are therefore dismissed.
6  Plaintiffs' motion for an extension of the discovery period (Docket
7  No. 161) is DENIED as moot.
8       Plaintiffs shall, within ten days, file a proposed judgment
9  conforming to the terms of this order.
10       IT IS SO ORDERED.

Dated: 9/26/08

CLAUDIA WILKEN
United States District Judge