IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRS RECOVERY, INC., a Virginia corporation; and DALE MAYBERRY,<br><br>         Plaintiffs,<br><br>    v.<br><br>JOHN LAXTON, aka johnlaxton@gmail.com; and NORTHBAY REAL ESTATE, INC.,<br><br>         Defendants.<br>_____/ | No. C 06-7093 CW<br><br>ORDER DENYING DEFENDANT NORTHBAY REAL ESTATE, INC.'S MOTION TO DISMISS<br>(Docket No. 260) |

Defendant Northbay Real Estate, Inc. moves to dismiss the complaint brought against it by Plaintiffs CRS Recovery Services, Inc. and Dale Mayberry.  Plaintiffs oppose Defendant's motion.  For the reasons set forth below, the Court DENIES Defendant's motion.

## BACKGROUND

On July 23, 1995, Mayberry registered the domain name "rl.com."  At that time, he also owned the domain name "mat.net."  Mayberry used the email address "dale@mat.net" as the administrative contact when he registered rl.com.  Mayberry last renewed the registration for rl.com on July 23, 2002, when he paid in advance for three years so that the registration would expire on July 24, 2005.

On December 19, 2003, a new registration of mat.net was made by Li Qiang, and Qiang subsequently used his control over the dale@mat.net email address to transfer ownership of rl.com to himself.

In May 2005, Laxton purchased rl.com from Bernali Kalita, who in the meantime had acquired it from Qiang. Laxton later assigned rl.com to Northbay.

On July 21, 2005, Mayberry signed two relevant documents. The first was titled "Agreement for Domain Name Transfer," and the second was attached to the agreement as Exhibit A and titled "Assignment." Donaldson Decl. ¶ 2, Ex. A; Lau Decl. ¶ 4, Ex. A, 3-5. In the latter document, Mayberry assigned "CRS Recovery Services, LLC" all rights, title and interest in and to the domain name rl.com. Id. While the body of the agreement also referred to "CRS Recovery Services, LLC" as the recipient of the rights to rl.com, the company is referred to as "CRS Recovery Services, Inc." above the signature line. Id. The agreement and assignment were executed by Mayberry, but were not signed by anyone on behalf of CRS Recovery Services. Id.

At the time that these documents were executed, neither CRS Recovery Services, Inc. nor CRS Recovery Services, LLC had been formed. Lau Decl. ¶ 4. Richard Lau, who is now the President of CRS Recovery Services, Inc., reached the agreement with Mayberry because he intended to establish CRS Recovery Services in some form shortly thereafter and wanted to obtain the rights to RL.com on behalf of it. Id.

Almost five months later, on December 13, 2005, Lau and Steven Lieberman incorporated CRS Recovery Services, Inc. in Virginia. Donaldson Decl. ¶ 7, Ex. F; Lau Decl. ¶ 5, Ex. B. No entity called CRS Recovery Services, LLC was ever formed. Lau Decl. ¶ 5.

2

On February 27, 2006, Lieberman sent Laxton a demand letter on behalf of Mayberry, stating that, among other things, "it is unequivocal that Mr. Mayberry is the rightful owner of the domain name RL.com." Donaldson Reply Decl. ¶ 2, Ex. A.

CRS Recovery Services, Inc. and Mayberry filed this action on November 15, 2006, against, among others, Laxton, Northbay and Qiang. Docket No. 1. On October 30, 2007, Plaintiffs filed their second amended complaint (2AC). Docket No. 51. In the 2AC, Plaintiffs allege, "In July, 2005, Mayberry transferred all of his right, title and interest in RL.Com to CRS for valuable consideration." 2AC ¶ 16. They also allege that "CRS stands in Mayberry's shoes pursuant to a written assignment to recover possession of RL.Com and MAT.Com, and to recover pecuniary damages suffered by Mayberry." 2AC ¶¶ 24, 31.

In early 2008, CRS Recovery Services, Inc. recovered mat.net from Liang and returned it to Mayberry. Donaldson Decl. ¶ 6, Ex. E; Lau Decl. ¶ 8.

In February 2008, after mat.net had been returned to Mayberry, he and Lau, personally and on behalf of CRS Recovery Services, Inc., signed a document entitled "Confirmation of Contract Performance and Unqualified Assignment of Rights." Donaldson Decl. ¶ 5, Ex. D; Lau Decl. ¶ 9, Ex. A, 1-2. In this document, they described the 2005 agreement as a contract between Mayberry and Lau and stated that Lau had subsequently conveyed all rights to recover rl.com to CRS Recovery Services, Inc. Donaldson Decl. ¶ 5, Ex. D; Lau Decl. ¶ 9, Ex. A, 1. In the February 2008 agreement, Mayberry again agreed that he conveys to CRS Recovery

3

Services, Inc. irrevocably and without qualification, all rights to the ownership of rl.com. Id.

On June 13, 2008, Plaintiffs filed a motion for leave to file a third amended complaint. Docket No. 76. In the motion, they stated, "Plaintiff Mayberry should be dismissed from the action, as he has recovered MAT.Net, and seeks no further relief." Id. at 3. Plaintiffs later withdrew this motion for leave. Docket No. 100.

CRS Recovery Services, Inc.'s corporate status has since been terminated. Donaldson Decl. ¶ 3, Ex. B.

## LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Because challenges to standing implicate a federal court's

4

1 subject matter jurisdiction under Article III of the United States
2 Constitution, they are properly raised in a motion to dismiss
3 under Rule 12(b)(1).  White v. Lee, 227 F.3d 1214, 1242 (9th Cir.
4 2000).

## DISCUSSION

In its motion, Northbay argues that neither Mayberry nor CRS Recovery Services, Inc. had standing at the onset of this case to pursue the claims as to RL.com.  Northbay states that Mayberry lacked standing because, in 2005, Mayberry assigned his interest in RL.com to CRS Recovery Services, LLC.  Northbay also argues that CRS Recovery Services, Inc. lacked standing, because Mayberry's 2005 assignment was in favor of the LLC and not the corporation, and because the assignment took place before the corporation was formed.  Thus, Northbay contends no one has standing to bring the claims related to RL.com.

In its reply, Northbay argues instead that the 2005 assignment was invalid and that, while Mayberry may have had standing to bring the claims related to RL.com at the inception of the lawsuit, he only asserted claims related to mat.net.

The Court finds that Plaintiffs have standing to pursue these claims.  CRS Recovery Services, Inc. obtained the rights to RL.com through the 2005 agreement and assignment.

"Under Virginia law, pre-incorporation actions of de jure corporations are valid and binding on the parties involved." Hubbard v. Stony Point Land, Inc., 457 B.R. 479, 482 (E.D. Va. 2011) (finding a contract signed twenty months before incorporation to be binding, and collecting cases).  "While Virginia does not recognize de facto corporate existence, it does

5

1 allow a de jure corporation to assume the rights and obligations
2 of a contract entered into by promoters prior to the legal
3 existence of the corporation." Geographic Network Affiliates-
4 Int'l, Inc. v. Enter. for Empowerment Found. at Norfolk State
5 Univ., 68 Va. Cir. 185, at *4 (2005). See also T.G. Slater & Son
6 v. Donald P. & Patricia A. Brennan LLC, 385 F.3d 836, 842 (4th
7 Cir. 2004) ("Virginia law allows an agent or promoter of a
8 business entity to bind the entity to contracts even before the
9 entity is formed."); Bolling v. General Motors Acceptance Corp.,
10 204 Va. 4, 10 (1963) (although "on the date the contract was
11 signed the corporation had not yet come into legal existence," the
12 parties were bound because the corporation later did come into
13 existence and continued to abide by the contract).

14 Here, Lau, acting as a promoter for CRS Recovery, Inc.,
15 obtained an assignment of rights to RL.com. While the agreement
16 contains an immaterial error regarding the form of the company,
17 the documents transfer the rights for RL.com to CRS Recovery
18 Services in some corporate form and impose obligations on that
19 entity. The corporation did later come into existence and it
20 abided by its obligations in attempting to recover both domain
21 names, including by filing the instant action. Accordingly, the
22 2005 assignment transferred rights in RL.com to CRS Recovery
23 Services, Inc. prior to the inception of this suit.

24 Further, even if the 2005 transfer were ineffective, Mayberry
25 had standing when the action was filed, and he subsequently
26 transferred rights to CRS Recovery Services, Inc. in the 2008
27 confirmation and agreement. "If an interest is transferred, the
28 action may be continued by or against the original party unless

6

1 the court, on motion, orders the transferee to be substituted in
2 the action or joined with the original party." Federal Rule of
3 Civil Procedure 25(c). Because CRS Recovery Services, Inc. is
4 already joined as a party, the Court need not consider whether it
5 should be substituted or joined here.

6 In addition, while Northbay argues that the operative
7 complaint makes clear that Mayberry brings claims only as to
8 mat.net, the complaint is susceptible to a broader construction.
9 In the prayer for relief, Plaintiffs specify that the mat.net
10 domain name should be transferred to Mayberry, but they pray that
11 the RL.com domain name be transferred to "plaintiff," a more
12 encompassing descriptor. In the body of the complaint, Plaintiffs
13 allege that Mayberry was injured by the loss of both domain names
14 and that CRS Recovery Services, Inc. "stands in Mayberry's shoes
15 pursuant to a written agreement to recover possession" of both
16 domain names. Further, while Plaintiffs have stated that they
17 would remove Mayberry as a named plaintiff, they did so with the
18 understanding that CRS Recovery Services, Inc. would be able to
19 pursue the claims that it gained through assignment from Mayberry.

20 To the extent that Northbay argues that CRS Recovery
21 Services, Inc. cannot prosecute this action because its corporate
22 status has been terminated, this is unavailing. Virginia state
23 law provides, "The termination of corporate existence shall not
24 take away or impair any remedy available to or against the
25 corporation . . . for any right or claim existing or any liability
26 incurred, prior to such termination," and that such actions "may
27 be prosecuted or defended by the corporation in its corporate
28 name." Virginia Code Ann. § 13.1-755. There is no evidence in

7

the record to suggest that CRS Recovery Services, Inc.'s claim arose after the termination of its corporate status.

CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Northbay's motion to dismiss (Docket No. 260).

IT IS SO ORDERED.

Dated: May 4, 2012

CLAUDIA WILKEN
United States District Judge