**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CRS RECOVERY, INC., a Virginia
corporation; and DALE MAYBERRY,

       Plaintiffs,

  v.

JOHN LAXTON, aka
johnlaxton@gmail.com; and
NORTHBAY REAL ESTATE, INC.,

      Defendants.

_____/

No. C 06-7093 CW

ORDER DENYING
MOTION FOR
JUDGMENT AS A
MATTER OF LAW
(Docket No. 349)
AND DENYING MOTION
TO MODIFY
PRELIMINARY
INJUNCTION OR
REQUIRE AN
ADDITIONAL BOND
(Docket No. 387)

Defendant Northbay Real Estate, Inc., through its Chapter 7 Bankruptcy Trustee, moves for judgment as a matter of law. Defendant John Laxton joins in its motion. Plaintiffs CRS Recovery, Inc. and Dale Mayberry oppose Defendants' motion. Plaintiffs also move to modify the permanent injunction imposed by the Court or to require Defendants to post a bond. For the reasons set forth below, the Court DENIES both motions.

BACKGROUND

On July 1995, Mayberry registered the domain name "rl.com" with Network Solutions, Inc., a registrar of domain names. See Docket No. 381, 155:8-9, 160:2-161:16; Docket No. 251:9-16; Pls.' Trial Ex. 1. Mayberry was the original owner of rl.com. Docket No. 164:3-4. After he registered rl.com, on October 3, 1995, Mayberry also registered the domain name "mat.net" with Network Solutions. Id. at 153:20-22, 163:25-164:2; Docket No. 382, 268:10-269:6. After Mayberry registered mat.net, he updated the administrative contact information for rl.com to reflect the email

address "dale@mat.net," in addition to his mailing address and telephone numbers, and to show his company, Micro Access Technologies, as the account holder. Docket No. 381, 163:14-165:19; Pls.' Trial Ex. 3.

When an individual registers a domain name, he or she, as the registrant, can pay for the registration in one year increments for between one and ten years at a time, and can renew the registration repeatedly when the original registration expires. Docket No. 382, 260:12-18. The date when the domain name comes up for renewal is referred to as the anniversary date. Id. at 263:22-25. On the anniversary date, the registrar automatically pays the registry to renew the domain name, even if the registrant has not yet paid the registrar for the renewal. Id. at 262:18-263:1. Verisign is the registry for the .com and .net top level domain names. Id. at 254:13-17. If the registrant has not paid the renewal fee to the registry by the anniversary date, the domain name goes into an "auto renew grace period." Id. at 264:9-16. In late 2003, this grace period for Network Solutions and Verisign was forty-five days. Id. at 264:17-20.[1]

If, by the end of the grace period, the registrant has still not paid the renewal fee, the registrar sends a "delete command" to the registry. Id. at 265:18-25. Despite its name, the delete command does not actually delete the domain name. Id. at 265:25-266:1. Instead, among other things, it puts the domain name into

---

[1] At this time, Network Solutions had recently been spun out of Verisign and certain documents created by Verisign continued to be used by Network Solutions to govern its relationships with registrants. Docket No. 383, 440:2-7.

United States District Court
For the Northern District of California

a status called a redemption grace period with the registry.  Id. at 266:2-5.  In late 2003, this redemption grace period lasted for thirty days.  Id. at 266:6-8.  If a registrant pays the renewal fee during that time period, the domain name is restored to active status for the registrant.  Id. at 266:9-12.

If the domain name is not restored during the grace period, it goes into a five-day pending delete queue, at the end of which the domain name is deleted and "drops," which means that it is made available for registration by the general public.  Id. at 260:5-11, 267:3-11.  Individuals can place a "back order," which allows them to register the domain name as soon as it drops.  Id. at 282:4-12.  However, during the auto renew grace period and the redemption grace period, no one other than the registrant can acquire the domain name or request restoration of the domain name, and in order to be re-registered through a back order, the domain name must expire, go through each grace period and then be formally deleted at the end of the pending delete period.  Id. at 267:12-19, 334:20-25.

Mayberry generally received annual renewal notices and invoices for the registration of the domain names by mail and email.  Docket No. 381, 162:6-17, 167:10-13, 178:12-179:3, 182:8-11.  He usually got these for the registration of mat.net about one or two months before the annual renewal date, which was in October.  Id. at 178:21-179:1.  The service agreement that governed Network Solutions's relationship with registrants in 2003 provided that it would "endeavor to provide you notice prior to the renewal of your services at least fifteen (15) days in advance of the renewal date," although it further provided that "you are

solely responsible for ensuring the services are renewed." Docket
No. 383, 440:1-22; Defs.' Ex. 137-2.

Mayberry last renewed the registration for mat.net on
February 19, 2002 for the time period from October 4, 2001 through
October 4, 2003; that renewal was completed prior to the
establishment of the grace periods and process described above,
which were newly established in 2003.  Docket No. 381, 179:3-221;
Docket No. 382, 327:24-328:14; Pls.' Trial Ex. 37.  He last
renewed the registration for rl.com on July 23, 2002, when he paid
in advance for three years so that the registration would expire
on July 24, 2005.  Docket No. 381, 157:20-158:6, 167:10-169:10;
Pls.' Trial Ex. 17.

In the fall of 2003, Mayberry did not receive renewal or
expiration notices or invoices related to mat.net.  Docket No.
381, 182:8-21.  Mayberry relied on receiving an invoice to know
when the renewal date was coming up and did not send in a renewal
payment because he did not receive an invoice.  Id. at 183:4-12,
227: 2-4.  At that time, Mayberry still used the dale@mat.net
email address, although it was no longer his primary email
address.  Id. at 166:1-6, 225:14-18.

On its anniversary date on October 3, 2003, mat.net expired
and its forty-five day auto renew grace period began.  Docket No.
382, 278:15-279:12.  On November 17, 2003, the delete command was
issued for mat.net and the thirty-day redemption grace period
began.  Id. at 280:2-23.

However, mat.net never completed the redemption grace period,
went into the pending delete queue or became available for anyone
in the public to register because, during the thirty day

4

**United States District Court**
For the Northern District of California

redemption grace period, on December 15, 2003, Verisign processed a restore command for it.  Docket No. 382, 281:3-282:1, 335:15-22; Docket No. 383, 466:18-467:7.  Mayberry had not asked that Network Solutions issue a restore code for mat.net.  Docket No. 381, 185:13-15.  As previously noted, the restore command could be used only to restore mat.net to the original registrant, Micro Access Technologies, and mat.net was restored to it.  Docket No. 382, 281:12-19; Docket No. 383, 467:8-17, 479:3-23.

Once a domain name is restored, there is no authorized process for anyone other than the original registrant to update the administrative contact or primary user information for the domain name.  Docket No. 382, 282:13-18.  However, after mat.net was restored to Micro Access Technologies, on December 19, 2003, someone other than Mayberry changed the name servers associated with mat.net and changed the primary user for that domain name from Mayberry to Li Qiang, without Mayberry's permission to do so. Docket No. 381, 172:4-174:7; Docket No. 383, 469:3-473:8, 479:3-23.  Through that change, Qiang took control of the dale@mat.net email account.  Docket No. 383, 469:3-473:8, 479:3-23.  Qiang did not acquire the domain name through the back order process.  Id. at 468:24-469:2.

On the morning of December 23, 2003, using the dale@mat.net email address, Qiang initiated a request to transfer rl.com to himself.  Docket No. 382, 359:16-360:13, 364:10-20; Pls.' Trial Ex. 82-63.  Network Solutions then sent an automated authorization request to dale@mat.net as the email address associated with rl.com, requesting authorization for the transfer.  Docket No. 382, 359:16-360:13, 361:22-362:9; Pls.' Trial Exs. 18, 82-61, 82-

63.  Authorization was given in response to the email less than a minute after the email was sent.  Docket No. 382, 360:4-19, 363:18-364:2; Pls.' Trial Exs. 18, 82-61, 82-63.  Mayberry did not receive the email, give permission for the transfer or authorize Qiang to take any of these actions.  Docket No. 381, 157:2-7, 169:24-1, 175:2-176:25.  Later that day, Qiang transferred rl.com from Network Solutions to another registrar based in China.  Docket No. 382, 366:2-367:7.  Mat.net was transferred from Network Solutions to another registrar on March 28, 2004.  Docket No. 383, 451:8-18.

In May 2005, Laxton purchased rl.com from Bernali Kalita.  Docket No. 382, 405:5-11, 417:19-20.  Sometime before that, Kalita had acquired it from Qiang.  Laxton later assigned rl.com to Northbay.

On July 21, 2005, Mayberry signed two relevant documents.  The first was titled "Agreement for Domain Name Transfer," and the second was attached to the agreement as Exhibit A and titled "Assignment."  Donaldson Decl., Docket No. 261, ¶ 2, Ex. A; Lau Decl. ¶ 4, Docket No. 271, Ex. A, 3-5.  In the latter document, Mayberry, in exchange for "good and valuable consideration," assigned "CRS Recovery Services, LLC . . . all right, title and interest in and to the domain name 'RL.COM' . . . and the right to bring actions and to recover damages for past infringement of any of the foregoing."  Id.  Although the body of the agreement also referred to "CRS Recovery Services, LLC" as the recipient of the rights to rl.com, the company is referred to as "CRS Recovery Services, Inc." above the signature line.  Id.  In the agreement, CRS Recovery agreed to pay Mayberry a fee and to attempt to

recover both rl.com and mat.net and turn the latter over to
Mayberry. Id. In exchange, CRS Recovery would retain ownership
of rl.com if it was recovered. Id. Mayberry also agreed to take
all actions necessary for the execution and performance of the
agreement and assignment and "the consummation of the transactions
contemplated" therein, including the attempt to recover mat.net
and rl.com. Id.

At the time that these documents were executed, neither CRS
Recovery Services, Inc. nor CRS Recovery Services, LLC had been
formed. Lau Decl. ¶ 4. Richard Lau, who is now the President of
CRS Recovery, Inc., reached the agreement with Mayberry because he
intended to establish CRS Recovery in some form shortly thereafter
and wanted to obtain the rights to rl.com on behalf of it. Id.

Almost five months later, on December 13, 2005, Lau and
Steven Lieberman incorporated CRS Recovery, Inc. in Virginia.
Donaldson Decl. ¶ 7, Ex. F; Lau Decl. ¶ 5, Ex. B; see also Docket
No. 382, 243:7-11. Lieberman was also Lau's attorney. Docket No.
382, 299:8-10. The articles of incorporation listed Greenberg &
Lieberman, LLC as one of the initial directors of the entity. Lau
Decl. ¶ 5, Ex. B. No entity called CRS Recovery Services, LLC was
ever formed. Lau Decl. ¶ 5.

In January 2006, Lau and Lieberman called Laxton on the phone
and demanded the return of rl.com. Docket No. 382, 290:12-15,
299:8-10; see also id. at 397:9-398:20 (Laxton's testimony
regarding the phone call, including that Lieberman told him that
he "was in possession of . . . a stolen domain name and that they
wanted it back, his client wanted it back"). During that
conversation, they offered to reimburse him what he had paid to

United States District Court
For the Northern District of California

acquire the domain name.  Id. at 290:20-291:2.  Laxton told them to send him this in writing.  Id. at 290:16-19, 291:3-5.

On February 27, 2006, Lieberman sent Laxton a demand letter on Greenberg & Lieberman, LLC letterhead, "intended only for the purpose of settling any disputes between my client, Brian D. Mayberry, Jr., and yourself."  Docket No. 382, 291:6-19; Pls.' Trial Ex. 86.  In the letter, Lieberman stated that "it is unequivocal that Mr. Mayberry is the rightful owner of the domain name RL.com" and stated that "my client has authorized me to offer to reimburse you for your acquisition costs in order to avoid extended litigation regarding this matter."  Pls.' Trial Ex. 86.

CRS Recovery, Inc. and Mayberry filed this action on November 15, 2006, against, among others, Laxton, Northbay and Qiang. Docket No. 1.  On October 30, 2007, Plaintiffs filed their second amended complaint (2AC).  Docket No. 51.  In the 2AC, Plaintiffs allege, "In July, 2005, Mayberry transferred all of his right, title and interest in RL.Com to CRS for valuable consideration." 2AC ¶ 16.  They also allege that "CRS stands in Mayberry's shoes pursuant to a written assignment to recover possession of RL.Com and MAT.Com, and to recover pecuniary damages suffered by Mayberry."  Id. at ¶¶ 24, 31.  In the 2AC, they asserted claims for conversion, intentional interference with contract, declaratory relief and unfair competition.

In early 2008, CRS Recovery recovered mat.net from Liang and returned it to Mayberry.  Donaldson Decl. ¶ 6, Ex. E; Lau Decl. ¶ 8.

In February 2008, after mat.net had been returned to Mayberry, he and Lau, personally and on behalf of CRS Recovery,

Inc., signed a document entitled "Confirmation of Contract Performance and Unqualified Assignment of Rights."  Donaldson Decl. ¶ 5, Ex. D; Lau Decl. ¶ 9, Ex. A, 1-2.  In this document, they described the 2005 agreement as a contract between Mayberry and Lau and stated that Lau had subsequently conveyed all rights to recover rl.com to CRS Recovery, Inc.  Donaldson Decl. ¶ 5, Ex. D; Lau Decl. ¶ 9, Ex. A, 1.  In the February 2008 agreement, Mayberry again agreed that he conveyed to CRS Recovery, Inc. irrevocably and without qualification, all rights to the ownership of rl.com.  Id.

On June 13, 2008, Plaintiffs filed a motion for leave to file a third amended complaint.  Docket No. 76.  In the motion, they stated, "Plaintiff Mayberry should be dismissed from the action, as he has recovered MAT.Net, and seeks no further relief."  Id. at 3.  Plaintiffs later withdrew this motion for leave.  Docket No. 100.

On September 26, 2008, the Court granted Plaintiffs' motion for summary adjudication on its claims against Laxton and Northbay for conversion and declaratory relief.  Docket No. 170.  The Court also dismissed Plaintiffs' claims for intentional interference with contract and unfair competition, because at the hearing, Plaintiffs agreed to dismiss these claims if they prevailed on the motion for summary adjudication of the other claims.  Id. at 18. Subsequently, the Ninth Circuit reversed in part this Court's summary adjudication order, finding that, under the facts presented at that time, material disputes remained regarding the circumstances under which Mayberry lost control of rl.com,

including whether this was the result of theft, fraud or abandonment.

On May 4, 2012, the Court denied Plaintiffs' motion to amend their complaint to withdraw their claims for conversion, intentional interference with contract and any requests for damages, to strike their jury demand and to reset the matter for a bench trial. Docket No. 322. Plaintiffs' request to withdraw the claims and requests for damages was conditional on the Court granting their request to strike the jury demand and proceed with a bench trial, which the Court denied. In that motion, Plaintiffs had noted, "Regardless of the ruling on this motion, Plaintiffs do not intend to pursue their claim for intentional interference with contract," and that "if the Court denies the request to amend the complaint and strike the jury demand, Plaintiffs will simply proceed with a jury trial as scheduled on all of their claims except intentional interference with contract, and will separately seek leave to withdraw that claim before trial." Docket No. 316, 1-2 n.1.

On May 4, 2012 as well, the Court denied Northbay's motion to dismiss the complaint. Docket No. 323. In its motion, Northbay argued that neither Mayberry nor CRS Recovery, Inc. had standing at the outset of this case to pursue the claims as to rl.com. Northbay stated that Mayberry lacked standing because, in 2005, Mayberry assigned his interest in rl.com to CRS Recovery Services, LLC and that, even if he had standing at the outset of the case to bring claims related to rl.com, he asserted only claims related to mat.net and had abandoned any claims related to rl.com. Northbay also argued that CRS Recovery, Inc. lacked standing, because

10

Mayberry's 2005 assignment was in favor of the LLC and not the corporation, the assignment took place before the corporation was formed and it was invalid.

In denying the motion, the Court found that CRS Recovery, Inc. obtained the rights to RL.com through the 2005 agreement and assignment and that, even if the 2005 transfer were invalid, Mayberry had standing when the action was filed, and he subsequently transferred rights to CRS Recovery, Inc. in the 2008 confirmation and agreement. Id. at 5-6. The Court also rejected Northbay's argument that the operative complaint could be read only to assert claims by Mayberry related to mat.net and found that it was "susceptible to a broader construction." Id. at 6. The Court noted that, although Plaintiffs have stated that they would remove Mayberry as a named plaintiff, they did so with the understanding that CRS Recovery, Inc. would be able to pursue the claims that it gained through assignment from Mayberry. Id.

A four day trial was held on May 7 through 10, 2012. Docket Nos. 339-42. On the first day of trial, Plaintiffs moved to dismiss voluntarily their claim for intentional interference with contract, which the Court granted. Docket No. 381, 4:17-20. Defendants did not object.

On May 9, 2012, Northbay filed a motion for judgment as a matter of law. Docket No. 333.

On May 10, 2012, the jury returned a verdict that Plaintiffs proved that Laxton and Northbay had converted rl.com. Docket No. 345. The jury also found that Defendants had not proved either of their affirmative defenses. Id. In particular, the jury found Defendants had not established that Plaintiffs abandoned rl.com

United States District Court
For the Northern District of California

before Defendants acquired it or that Qiang had obtained rl.com by fraud rather than by theft and therefore gained title to it, which could be passed to Defendants as good faith purchasers.  Id. After the jury returned its verdict, Plaintiffs voluntarily dismissed their claim for violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code section 17200, with the Court's permission.  Docket No. 384, 565:15-24.  Defendants did not object to the dismissal.

On May 14, 2012, the clerk entered judgment in favor of Plaintiffs against Defendants on the first and fourth claims for conversion and declaratory relief, stating that Plaintiffs are the lawful owners of the domain name rl.com and noting that the second and third claims for intentional interference with contract and unfair competition had been dismissed.  Docket No. 344.  On the same date, the Court entered a permanent injunction.  Docket No. 343.

On May 31, 2012, Northbay filed the instant renewed motion for a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  Docket No. 349.  On June 4, 2012, Laxton joined in the motion.  Docket No. 352.

On November 8, 2012, Plaintiffs filed a motion to modify the permanent injunction or to require Defendants to post an additional bond, and for a case management conference.  Docket No. 387.

DISCUSSION

I.   Motion for judgment as a matter of law

Defendants request that, under Federal Rule of Civil Procedure 50, the Court set aside the jury's verdict in favor of

Plaintiffs on the claims for conversion and declaratory relief and
that the Court enter judgment in favor of Defendants on the
remaining claims pursuant to Federal Rule of Civil Procedure 52.

A. Legal standard

A motion for judgment as a matter of law after the verdict
renews the moving party's prior Rule 50(a) motion for judgment as
a matter of law at the close of all the evidence.  Fed. R. Civ.
P. 50(b).  Judgment as a matter of law after the verdict may be
granted only when the evidence and its inferences, construed in
the light most favorable to the non-moving party, permits only one
reasonable conclusion as to the verdict.  Josephs v. Pac. Bell,
443 F.3d 1050, 1062 (9th Cir. 2006).  Where there is sufficient
conflicting evidence, or if reasonable minds could differ over the
verdict, judgment as a matter of law after the verdict is
improper.  See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d
772, 775 (9th Cir. 1990); Air-Sea Forwarders, Inc. v. Air Asia
Co., 880 F.2d 176, 181 (9th Cir. 1989).

Federal Rule of Civil Procedure 52 governs findings and
conclusions made by the Court in actions tried on the facts
without a jury or with an advisory jury.  It provides in part
that, after making such findings, on a party's timely motion after
the entry of judgment, "the court may amend its findings--or make
additional findings--and may amend the judgment accordingly."
Fed. R. Civ. P. 52(b).  It also provides, "If a party has been
fully heard on an issue during a nonjury trial and the court finds
against the party on that issue, the court may enter judgment
against the party on a claim or defense that, under the

United States District Court
For the Northern District of California

controlling law, can be maintained or defeated only with a

favorable finding on that issue."  Fed. R. Civ. P. 52(c).

B. Discussion

1. Standing of Mayberry and mootness of his claims

In their motion, Defendants argue that Mayberry no longer had

standing to prosecute his claims at the time of trial because he

lacked a stake in the case at that point and his claims were moot.

Defendants base their arguments on the fact that Mayberry assigned

his rights to rl.com to CRS Recovery, recovered mat.net prior to

trial and did not seek monetary damages at trial.  Defendants

contend that, as a result, judgment should be entered in their

favor on all claims asserted by Mayberry.

Standing and mootness are distinct issues that underlie

whether the Court has jurisdiction under Article III to adjudicate

a case and are separate from the merits of the claims asserted.

See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.

(TOC), Inc., 528 U.S. 167, 189-190 (2000) (discussing the

conflation of standing and mootness); Warth v. Seldin, 422 U.S.

490, 500-01 (1975) ("standing in no way depends on the merits of

the plaintiff's contention that particular conduct is illegal").

The standing requirement is "perhaps the most important" of

the doctrines under Article III of the Constitution that limit

"the federal courts to adjudicating actual 'cases' and

'controversies.'"  Allen v. Wright, 468 U.S. 737, 750-751 (1984).

"Those two words confine 'the business of federal courts to

questions presented in an adversary context and in a form

historically viewed as capable of resolution through the judicial

process.'"  Massachusetts v. Envtl. Prot. Agency, 549 U.S. 497,

United States District Court
For the Northern District of California

516 (2007) (quoting Flast v. Cohen, 392 U.S. 83, 95 (1968)).  "At bottom, 'the gist of the question of standing' is whether petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'"  Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962).  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint . . . . The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing." Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005), abrogated in part on other grounds by Levin v. Commerce Energy, Inc., 130 S. Ct. 2323 (2010) (quotation marks and citations omitted).  Only one plaintiff need have standing to assert a claim for the Court to have jurisdiction under Article III.  See Kaahumanu v. Hawaii, 682 F.3d 789, 798 (9th Cir. 2012) ("'Because we find [one plaintiff] has standing, we do not consider the standing of the other plaintiffs.'") (quoting Watt v. Energy Action Educ. Found., 454 U.S. 151, 160 (1981)).

        "Mootness can be characterized as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1116 (9th Cir. 2003) (quoting Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir. 1999)); see also Friends of the Earth, 528 U.S. at 191 (explaining that this description of mootness "is not comprehensive").  "Thus, '[a]n

United States District Court
For the Northern District of California

actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Id. (quoting Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th Cir. 2002). "Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy." Id. (internal quotation marks and citations omitted). "'The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide.'" Id. at 1116-17 (quoting Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. United States Dep't of Energy, 232 F.3d 1300, 1303 (9th Cir. 2000)).

In the instant motion, Defendants have not challenged the standing of CRS Recovery or asserted that its claims are moot, and have not disputed that Mayberry had standing at the time that the case was filed. Thus, there is no dispute that there was a justiciable case or controversy properly before this Court both at the time of filing and at the time of trial. Further, even if the Article III jurisdiction inquiry were limited to Mayberry's individual stake in the case, contrary to Defendants' characterization, Mayberry has retained an interest in its outcome throughout its duration and did not concede at trial that his claims were moot, as Defendants have averred without citation. Among other things, Plaintiffs have sought a declaratory judgment that rl.com was improperly taken from Mayberry through identity theft and forged transfer documents and that the transfers based on these wrongful actions should be reversed, even if he would then transfer the domain name to CRS Recovery.

### 2. Whether domain names are subject to a conversion claim

Defendants argue that the jury's verdict on the conversion claim should be reversed because domain names are not property subject to a conversion claim.

To establish the tort of conversion, "a plaintiff must show 'ownership or right to possession of property, wrongful disposition of the property right and damages.'" Kremen v. Cohen, 337 F.3d 1024, 1029 (9th Cir. 2003) (quoting G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc., 958 F.2d 896, 906 (9th Cir. 1992)). The Ninth Circuit previously found that the domain names in this case are property subject to conversion claims:

> Like the majority of states to have addressed the issue, California law recognizes a property interest in domain names. As we explained in Kremen v. Cohen, domain names are intangible property subject to conversion claims. 337 F.3d 1024, 1030 (9th Cir. 2003). To this end, "courts generally hold that domain names are subject to the same laws as other types of intangible property." Jonathan D. Hart, Internet Law 120 (2008); see, e.g., Office Depot Inc. v. Zuccarini, 596 F.3d 696, 701–02 (9th Cir. 2010) (domain name subject to receivership in the district of domain name registrar). We have previously explained the logic of California understanding domain names as intangible property because domain names are well-defined interests, exclusive to the owner, and are bought and sold, often for high values. Kremen, 337 F.3d 1024. Domain names are thus subject to conversion under California law, notwithstanding the common law tort law distinction between tangible and intangible property for conversion claims. Id.

CRS Recovery, Inc. v. Laxton, 600 F.3d 1138, 1142 (9th Cir. 2010).

Defendants contend that, despite the Ninth Circuit's discussion in this case and in Kremen, this Court should hold that, as a matter of law, "under California law, a domain name is not property that may be converted." Renewed Mot. 6. Defendants

**United States District Court**
For the Northern District of California

argue that, in <u>Kremen</u>, because no California court had squarely decided the issue, the Ninth Circuit found that domain names were property subject to conversion based on its prediction of how California courts would resolve the question.  Defendants contend that a subsequent California Court of Appeal decision, <u>In re Forchion</u>, 198 Cal. App. 4th 1284 (2011), showed that this prediction was erroneous.

However, <u>Forchion</u> does not compel this conclusion.  In that case, the California Court of Appeal considered whether an individual could statutorily change his name to the name of his website, "NJWeedman.com."  <u>Forchion</u>, 198 Cal. App. 4th at 1286. The court found that he could not and, in so holding, discussed the confusion that could ensue if the plaintiff were allowed to change his name this way but later lost the use of NJWeedman.com as a domain name, thereby allowing someone else to register it. <u>Id.</u> at 1287, 1309-12.  During its discussion of the nature of a domain name, the court quoted several passages from a discussion in a note published in a law journal that explained the author's belief that a domain name is not property but is instead the product of a contract for services between the registrant and the registrar.  <u>Id.</u> at 1308-09 (quoting Note, <u>Kremen v. Cohen: The "Knotty" Saga of Sex.Com</u> 45 Jurimetrics J. 75, 84-91 (2004)).  The court also pointed out that other notes urged the contrary approach, which the Ninth Circuit had adopted.  <u>Id.</u> at 1309.  The court, however, went on to state, "Regardless of whether a domain name is a registrant's property or merely the product of a services contract, a registrant may lose any proprietary interest in the domain name if he or she fails to pay periodic renewal fees

**United States District Court**
For the Northern District of California

or breaches the registration agreement with the registrar." <u>Id.</u> at 1309.  Thus, the court did not directly address or even clearly express its own views on whether domain names are property. Rather, it raised the issue only as background in a very different context, before moving on to consider the matters relevant to the case before it.  This Court is bound to follow the Ninth Circuit's contrary determination as law of the case, as well as its controlling holding in <u>Kremen</u>.

Accordingly, the Court denies Defendants' motion to reverse the jury's verdict on this claim based on their contention that domain names are not property subject to conversion.

3. Demand for return of rl.com by CRS Recovery

Under California law, "where a person entitled to possession" of property "demands it, the wrongful, unjustified withholding is actionable as conversion." <u>CRS Recovery</u>, 600 F.3d at 1145. Defendants argue that Plaintiffs did not present evidence that a demand for the return of rl.com was made on behalf of CRS Recovery, and thus the jury verdict on the conversion claim should be reversed.

Plaintiffs offered evidence that Lieberman and Lau requested the return of rl.com from Laxton on multiple occasions, through a phone call and a letter.  Defendants do not dispute that Leiberman and Lau made these demands or that Laxton understood them as such, and instead argue that these demands were made on behalf of Mayberry, who was not entitled to possession at that time, and not on behalf of CRS Recovery.

Defendants' arguments are unavailing for a number of reasons. The jury found in favor of Plaintiffs collectively, including both

CRS Recovery and Mayberry.  Plaintiffs have presented evidence
that CRS Recovery agreed to try to recover both domain names, with
the full assistance of Mayberry, by exercising the rights of
Mayberry to the domain names.  Further, even if Mayberry were not
a proper plaintiff, CRS Recovery was, and it was the principals of
CRS Recovery who made the demands.  Defendants have not offered
any authority requiring that CRS Recovery demand return of the
domain name while identifying itself as the entity with the right
to possession.  That Lau and Lieberman asserted that they were
acting on behalf of their client, Mayberry, is consistent with the
arrangement that Lau had made with Mayberry on behalf of CRS
Recovery to try to use his rights to recover the domain names.

Accordingly, Plaintiffs offered sufficient evidence to
support the jury's finding that they made a demand for the return
of rl.com, and the Court denies Defendants' motion to vacate the
verdict on the conversion claim for this reason.

4. Declaratory judgment claim

Defendants argue that the Court should reverse the judgment
on the declaratory relief claim because the "predicate for or
substance of plaintiffs' declaratory relief claim was their
conversion claim" and "judgment must be rendered against
plaintiffs and in favor of defendants on plaintiffs' conversion
claim."  Renewed Mot. 9.  However, the Court has rejected
Defendants' arguments regarding the conversion claim.  Because
Defendants' contention on the declaratory relief claim is merely
derivative of their unmeritorious arguments on the conversion
claim, the Court also denies their motion as to the declaratory
relief claim.

United States District Court
For the Northern District of California

5. UCL and wrongful interference with contract claims

Defendants argue that, pursuant to Rule 52, the Court should make findings that Plaintiffs failed to offer evidence in support of their UCL claim and enter judgment against them on the claim. Defendants alternatively contend that the Court should amend the judgment to reflect that Plaintiffs dismissed their UCL claim with prejudice or to state that they may not bring it again in the future. In a footnote, Defendants ask that the same be done for the wrongful interference with contract claim.

As Defendants acknowledge, the UCL claim "was a nonjury claim." Renewed Mot. 10. As explained above, Plaintiffs dismissed their UCL claim after the jury had returned a verdict on the conversion and declaratory relief claims. Defendants have offered no authority to support that the Court may make such findings or enter judgment as a matter of law on a claim after it has been dismissed voluntarily with Court permission.

In addition, the Court declines to modify the judgment to reflect that the dismissal of the claims for violation of the UCL and wrongful interference with contract was with prejudice.

Defendants argue that the dismissal of the UCL claim should be with prejudice "in light of plaintiffs' purported dismissal of their Section 17200 claims after the jury returned its verdict and before the Court ruled on their claims . . . as well as in view of the fact that plaintiffs dismissed the same claims in 2008." Renewed Mot. 10. Defendants also argue that the wrongful interference claim has been dismissed multiple times. Id. at 11 n.5.

**United States District Court**
For the Northern District of California

In support, Defendants cite language set forth in Rule 41(a)(1)(B), which provides in part that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." However, this subpart is applicable to dismissal of an action by the plaintiff without a court order through the filing of a notice of dismissal or stipulation. Rule 41(a)(2) governs the dismissal of actions by court order and provides that, unless the order states otherwise, a dismissal under that paragraph is without prejudice. Here, the Court granted Plaintiffs permission to dismiss the claims; Plaintiff did not act without a court order. Further, here, Plaintiffs eliminated claims but did not dismiss the action. See <u>Hells Canyon Pres. Council v. United States Forest Serv.</u>, 403 F.3d 683, 687-689 (9th Cir. 2005) (Rule 41(a) does not encompass dismissal of individual claims; instead, this is properly considered an amendment under Rule 15(a)); <u>Ethridge v. Harbor House Restaurant</u>, 861 F.2d 1389, 1392 (9th Cir. 1988); <u>see also</u> <u>Hells Canyon</u>, 504 F.3d at 690 ("It is axiomatic that prejudice does not attach to a claim that is properly dropped from a complaint under Rule 15(a) prior to final judgment."). Finally, in 2008, Plaintiffs conditionally dismissed the UCL and wrongful interference claims only if the motion for summary judgment on their claims for conversion and declaratory relief were granted, in order to obtain a final judgment. Because the Court granted the motion as to the other claims, it dismissed the UCL and wrongful interference claims. However, the Ninth Circuit then reversed the order

granting summary judgment on those claims, thereby removing the
condition that Plaintiffs had placed on their dismissal.

In support of their request, Defendants cite Williams v. Ford
Motor Credit Co., 627 F.2d 158, 159-60 (8th Cir. 1980).  However,
in that case, the court discussed a dismissal of an action under
Rule 41(a), which is inapplicable here.  Further, in Williams, the
jury returned a verdict for the plaintiff and the defendant filed
a motion for a judgment notwithstanding the verdict.  Id. at 159.
In response, the plaintiff argued that the motion should be denied
and requested in the alternative that, if the court decided the
verdict should not stand, the action be dismissed without
prejudice to refiling in state court.  Id.  The trial court took
the latter action.  Id.  The appellate court reversed and directed
the trial court to rule on the motion for judgment
nothwithstanding the verdict.  Id. at 161.  The court found that
the only apparent reason for the plaintiff's request was
apprehension of the court's ruling on the pending motion and that
the dismissal would prejudice the defendant by subjecting it to
more litigation in state court after the federal action had
already progressed to trial.  Id. at 159-60.

Here, in contrast, Plaintiffs did not seek to dismiss the
entirety of the action.  Before the trial began, and without any
motion for judgment as a matter of law pending, they sought to
dismiss the wrongful interference claim, and Defendants did not
object.  Further, they sought to dismiss the UCL claim because
they had already obtained their desired relief through the
favorable verdict on their other claims.  Thus, there was no
reason for the Court to rule on the UCL claim.  Especially in

United States District Court
For the Northern District of California

23

United States District Court
For the Northern District of California

light of the fact that Plaintiffs' voluntary dismissal of the UCL claim was again occasioned by a favorable finding on their other claims, it would be inequitable for the Court to hold, as Defendants apparently request, that, if the jury verdict were reversed during Defendants' pending appeal, Plaintiffs would be barred under any circumstance from pursuing the UCL claim.

Accordingly, the Court denies Defendants' request to modify the final judgment to dismiss the UCL and wrongful interference claims with prejudice or to state that Plaintiffs are foreclosed from pursuing them under any circumstance.

II.   Motion to modify permanent injunction or to require an additional bond

Plaintiffs seek to modify the permanent injunction that is currently in place so that they can alienate the domain name rl.com prior to the resolution of the appeal, or to require Defendants to post a $500,000 bond as security for any damages caused by Plaintiffs' inability to alienate the domain name during the appeals process.

The permanent injunction entered by the Court stated that Plaintiffs are the lawful owners of rl.com and enjoined Defendants from interfering with Plaintiffs' rights to possession, control and use.   Docket No. 343.   The Court also stated,

> In the event an appeal is taken from the Judgment herein, this Order shall remain in effect pending decision of the appeal, without any bond being required of Plaintiffs, except upon the prior application of Defendants, supported by a showing of good cause. However, in such event, Plaintiffs shall not be permitted to alienate RL.com until mandate of the Ninth Circuit issues and the time to petition for a writ of certiorari has passed.   If a petition for a writ of certiorari is filed, Plaintiffs shall not be permitted to alienate RL.com until the petition is denied or, if the petition is granted, until the matter is decided.

United States District Court
For the Northern District of California

1   Id. at 1-2.[2]

2       Plaintiffs argue that the condition in the permanent

3   injunction restricting alienation is akin to a stay of the

4   injunction pending appeal pursuant to Rule 62 and thus that the

5   Court must require a bond or other appropriate terms for their

6   security.  Plaintiffs contend that the permanent injunction should

7   be altered to prevent them from incurring substantial economic

8   harm during the pendency of the appeal.

9       The Court notes that, in connection with Defendants' motion

10  to stay the injunction imposed after the motion for summary

11  adjudication, Plaintiffs themselves proposed, and stipulated to,

12  the requirement that they refrain from alienating the domain name

13  during the appeals process.  See Pls.' Opp. to Defs.' Mot. to

14  Stay, Docket No. 195, 9; Carreon Decl., Docket No. 195, ¶ 13; see

15  also Carreon Decl. ¶ 16 (requesting that the Court impose either

16  the condition that the domain not be alienated or require that the

17  registrar "lock" the domain name, so that its registration

18  information cannot be modified).  Further, when sale of the domain

19  name was raised shortly before trial, Plaintiffs informed the

20  Court that they did not intend to sell the domain name and rather

21  that CRS Recovery, through Lau, intended to use it.  See Docket

22  No. 385, 37:12-38:2 (stating that Lau "is not interested in

23  divesting himself of the domain name and selling it"); see also

24

25

26  _____

27      [2] The condition included in the permanent injunction that
    contemplated the possibility of a bond in Defendants' favor was
28  proposed verbatim by Plaintiffs and is not at issue in the present
    motion.  See Docket No. 171 (Pls.' Proposed Permanent Injunction).

Carreon Decl. ¶ 15 (stating that CRS Recovery intended to use the domain name while the appeal was pending).

Plaintiffs also have not offered any evidence to support their assertions that the appeal condition in the permanent injunction is causing them to suffer harm.  Plaintiffs state in their motion that the injunction means that they cannot use the domain "for a commercial website or otherwise commercialize it," "mortgage it," "challenge a third party who wishes to use RL as one of the new" generic top level domains (gTLDs) or sell it. Mot. to Modify 5.  However, Plaintiffs have not submitted evidence that this appeal condition prevents them from using the domain name for a commercial purpose or to produce income during the appeal and it is not clear how this term could interfere with Plaintiffs' ability to challenge third parties who may wish to use RL in connection with a different generic top level domain.

In addition, the Court declines to require Defendants to post a bond at this time.  The record contains evidence that Northbay is currently in bankruptcy and is represented by the Trustee of its estate and that Laxton is proceeding pro se due to his inability to pay counsel.

Accordingly, the Court DENIES Plaintiffs' motion.  However, if the parties are able to reach an agreement, the Court will entertain a stipulation to modify the injunction to allow Plaintiffs to sell the domain name and invest the proceeds pending appeal.

CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' renewed motion for a judgment as a matter of law (Docket No. 349)

and DENIES Plaintiffs' motion to modify the permanent injunction or to require the posting of a bond (Docket No. 387).

Because Plaintiffs' request for a case management conference appears to be to discuss the status of Defendants' motion, which the Court has resolved in this Order, the Court declines to set a case management conference at this time.

IT IS SO ORDERED.

Dated: 1/10/2013

CLAUDIA WILKEN
United States District Judge